

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-18-00082-CV

IN THE INTEREST OF M.M.W. AND S.E.W., CHILDREN

On Appeal from the 250th District Court
Travis County, Texas
Trial Court No. D-1-FM-15-007458

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Justice Stevens

MEMORANDUM OPINION

Kathleen Wotring (Kathleen) and Steven Charles Wotring (Steven) were divorced in Travis County[1] and were appointed joint managing conservators of their minor children, M.M.W. and S.E.W. One year later, Kathleen filed her original petition to modify parent-child relationship. As a result of Steven's conduct in the ensuing months, Kathleen sought (1) to be appointed sole managing conservator, (2) enforcement of certain provisions of the divorce decree, (3) reimbursement for medical expenses, (4) a protective order against Steven, and (5) a contempt order for Steven's violations of the divorce decree and later orders of the trial court. After a long hearing, the trial court entered its final order in suit to modify parent-child relationship (the Modification Order), an order of criminal and civil contempt, and a final protective order (the Protective Order), granting Kathleen all of the relief she sought.

On appeal, Steven complains (1) that the Protective Order violates his right to free speech guaranteed by the First Amendment to the United States Constitution, (2) that there is factually and legally insufficient evidence to support the trial court's finding in the Protective Order that Kathleen was the victim of stalking, and (3) that the trial court erred in granting a lifetime protective order.[2] Because we find that sufficient evidence supports the trial court's findings and

---

[1]Originally appealed to the Third Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). We follow the precedent of the Third Court of Appeals in deciding this case. *See* TEX. R. APP. P. 41.3.

The notice of appeal states that Steven appeals the Modification Order, the order of criminal and civil contempt, and the Protective Order. Although, Steven's brief also purports to appeal all three orders, the only errors addressed in his argument concern the Protective Order. To the extent that Steven challenges the Modification Order and the order of criminal and civil contempt, any such challenge has been waived as a result of inadequate briefing. *See* TEX. R. APP. P. 38.1(i); *V.N.G. v. Tex. Dep't of Family & Protective Servs.*, No. 03-18-00329-CV, 2018 WL 5023960, at *3 (Tex. App.—Austin Oct. 17, 2018, no pet.) (mem. op.).

that Steven did not preserve his other two complaints for our review, we affirm the trial court's judgment.

## I.      Procedural Background

While her petition to modify parent-child relationship (the Petition to Modify) was pending, Kathleen filed her verified application for a protective order and request for temporary protective order (the Application) under Chapter 7A of the Texas Code of Criminal Procedure.[3] In the Application, Kathleen alleged that she was a victim of acts and conduct by Steven that constituted stalking under Article 42.072 of the Texas Penal Code.[4]  Kathleen alleged that Steven had, for example

1.      sent many harassing emails to Kathleen and the professionals appointed by the trial court in the case;
2.      made posts on social media disparaging Kathleen and accusing her of immoral and unethical behavior;
3.      emailed Kathleen's employer falsely accusing her of immoral and illegal behavior;
4.      emailed her family members and their employers;
5.      stalked the court-ordered professionals; and
6.      contacted and harassed their minor children.

Kathleen attached copies of reports and emails to the Application that documented the allegations made against Steven.

The hearing lasted several days.  At the conclusion, the trial court granted the Application and entered the Protective Order that granted protection for Kathleen, her minor children, her immediate family members, and any member of her household (the Protected Person(s)).  In the

---

[3]*See* TEX. CODE CRIM. PROC. ANN. art. 7A.01(a)(1) (West Supp. 2018), art. 7A.02 (West 2015).

[4]*See* TEX. PENAL CODE ANN. § 42.072 (West 2016).

3

Protective Order, the trial court found that Kathleen was the victim of acts and a course of conduct by Steven that constituted stalking. *See* TEX. CODE CRIM. PROC. ANN. art. 7A.03(a) (West 2015) (requiring the trial court, after the hearing, to "find whether there are reasonable grounds to believe that the applicant is the victim of sexual assault or abuse, stalking, or trafficking"). The Protective Order contained the following findings by the trial court:

> (2)    Respondent has [directed communications], on more than one occasion and pursuant to the same scheme or course of conduct that has been directed specifically at Applicant, which Respondent knew or reasonably should have known would cause Applicant to feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended and would cause a reasonable person to feel harassed, annoyed, alarmed, tormented, embarrassed, or offended;
>
> . . . .
>
> (4)    Respondent's conduct, even up to and on the eve of the hearing on Applicant's *Application for Protective Order*, was reasonably likely to harass, annoy, alarm, abuse, torment, or embarrass Applicant and has caused Applicant to feel harassed, annoyed, alarmed, abused, tormented or embarrassed;
>
> (5)    Respondent has frequently, if not relentlessly, directed communications to Applicant, Applicant's employers, family members, and others in ways which are not confidential such as email, social media, and in person that refers to Applicant as follows (by way of example and not by limitation): (a) applicant has sexually abused of the [sic] children, (b) forced the children to watch Applicant participate in orgies or other inappropriate sexual acts, (c) stalked the children and Respondent, (d) abused the children, (e) neglected the children, (f) referred to Applicant as a "monster" that applicant is "a monster raising a monster" (g) mobbed the Children and/or Respondent (h) harassed the Children and/or Respondent, (i) that Applicant is "psychotic" or engages in conduct based upon her "psychosis"; narcissistic; (h) referring to friends of Applicant as "narcissistic", [sic] "narcissistic monkeys", [sic] "swingers", [sic] "cuernyswingers" [sic] and that the[y] hold "illegal sex camp", [sic] (k) has forced the children to vacation with sexual abusers of the children; that (1) Applicant uses or abuses controlled substances such as Xanax, Cocaine, and the like.
>
> (6)    . . . (T)hese examples are specifically prior conduct and communications by Respondent for which the Court has found constituted Stalking

4

and reasonably caused Applicant and Applicant's family members to feel harassed, annoyed, alarmed, abused, tormented, embarrassed, offended or otherwise in fear of their personal safety . . . .

       (7)     Respondent's behavior has caused Applicant as well as members of Applicant's household and family members to genuinely feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended and genuinely frightened for that of their own personal safety and that of Petitioner's children;

       (8)     Respondent's actions have extended to the family members of Applicant, employers of Applicant and the employers of Applicant's family members, as well as directed towards the professionals the Court Ordered to provide services for the parties and the Children . . . .

The Protective Order prohibited Steven from:

1. Directly or indirectly engaging in conduct directed at any Protected Person that is considered stalking under Section 42.072 of the Texas Penal Code;

2. Directly or indirectly disseminating, publishing, or causing to be published anything regarding a Protected Person that causes that person to feel harassed, annoyed, frightened, threatened, tormented, or embarrassed;

3. Directly or indirectly communicating with an employer of a Protected Person except as otherwise provided in the order;

4. Communicating, encouraging, or causing to be communicated, published, shared, or distributed in any way information, communication, or otherwise to Kathleen, her employers, or her family members certain specified accusations of inappropriate or illegal conduct by Kathleen and her friend;

5. Communicating in any way, except as provided in the order, with a Protected Person, or any employer, employee, or coworker of a Protected Person;

6. Going within 200 yards, or remaining within 200 yards, of any location where a Protected Person is located;

7. Going within 200 yards of the current or future residence, place of employment, child care facility, or school of any Protected Person, except as provided in the order;

5

8. following, photographing, or recording a Protected Person, or placing a location monitoring device on any property in the possession of a Protected Person;

9. removing a child of Kathleen from the physical custody or possession of Kathleen, or any care provider, school, or mental health, medical or other treatment provider with whom the child is placed;

10. committing family violence against a Protected Person, including acts intended to result in physical harm, bodily injury, assault, or sexual assault or making threats reasonably placing the person in fear of physical harm, bodily injury, assault or sexual assault; and

11. possessing a firearm.

Additionally, the Protective Order contained exceptions relating to Steven's possession of and access to the minor children as provided in the Modification Order, or any later order modifying either the Modification Order or the Protective Order. Finally, the Protective Order provided that it was effective for the lifetimes of the Protected Persons.

## II. Sufficient Evidence Supports the Trial Court's Finding

In his second issue, Steven contends that there is legally and factually insufficient evidence to support the trial court's finding that Kathleen was a victim of stalking. We disagree.

### A. Standard of Review

If a trial court determines that there are reasonable grounds to believe the applicant for a protective order is the victim of stalking, it must grant a protective order. *Eckchum v. State for Protection of Ketchum*, No. 03-15-00270-CV, 2016 WL 3677122, at *3 (Tex. App.—Austin July 7, 2016, no pet.) (mem. op.) (citing TEX. CODE CRIM. PROC. ANN. art. 7A.03(b)). Since the trial court has no discretion to grant the protective order, and since it acts mainly as a fact-finder, we "review its determinations under the legal and factual sufficiency standards." *In re Doe*, 19

S.W.3d 249, 253 (Tex. 2000) (citing *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998)); *see Eckchum*, 2016 WL 3677122, at \*2.

In our legal sufficiency review, "we consider the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it." *Eckchum*, 2016 WL 3677122, at \*2 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 822, 827 (Tex. 2005)). "To prevail, an appellant must show that no more than a scintilla of evidence supports a finding on which the opponent had the burden of proof." *Id*. (citing *Waste Mgmt. of Tex., Inc. v. Tex. Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142, 156–57 (Tex. 2014); *City of Keller*, 168 S.W.3d at 826). There is more than a scintilla of evidence "when the evidence enables reasonable and fair-minded people to differ in their conclusions." *Id*. (citing *Gharda USA, Inc. v. Control Sols., Inc.*, 464 S.W.3d 338, 347 (Tex. 2015)).

In our factual sufficiency review, we consider the entire record and will "set aside the trial court's order only if the evidence is so weak as to make the order clearly wrong and manifestly unjust." *Id*. (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam)).

Under both standards, since the trial court, as fact-finder, "is the sole judge of the credibility of the witnesses and the weight to be given to their testimony, . . . [w]e defer to [it's] implicit determinations of credibility and weight to be given to the evidence." *Id*. (citing *City of Keller*, 168 S.W.3d at 816–17, 819–20, 822; *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003)).

**B.     Applicable Law**

Under Section 42.072, stalking includes both "conduct that threatens bodily injury or death, and conduct that causes harassment, annoyance, alarm, abuse, torment, embarrassment, or offense." *Id*. at *3. Section 42.072 provides that a person commits the offense of stalking:

> (a)     . . . . if the person, on more than one occasion and pursuant to the same scheme or course of conduct that is directed specifically at another person, knowingly engages in conduct that:
>
>> (1)     constitutes an offense under Section 42.07 [harassment], or that the actor knows or reasonably should know the other person will regard as threatening:
>>
>>> (A)     bodily injury or death for the other person;
>>>
>>> (B)     bodily injury or death for a member of the other person's family or household or for an individual with whom the other person has a dating relationship; or
>>>
>>> (C)     that an offense will be committed against the other person's property;
>>
>> (2)     causes the other person, a member of the other person's family or household, or an individual with whom the other person has a dating relationship to be placed in fear of bodily injury or death or in fear that an offense will be committed against the other person's property, or to feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended; and
>>
>> (3)     would cause a reasonable person to:
>>
>>> (A)     fear bodily injury or death for himself or herself;
>>>
>>> (B)     fear bodily injury or death for a member of the person's family or household or for an individual with whom the person has a dating relationship;
>>>
>>> (C)     fear that an offense will be committed against the person's property; or

8

(D)     feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended.

. . . .

(c)     For purposes of this section, a trier of fact may find that different types of conduct described by Subsection (a), if engaged in on more than one occasion, constitute conduct that is engaged in pursuant to the same scheme or course of conduct.

TEX. PENAL CODE ANN. § 42.072.  Under Section 42.07, a person harasses another if, "with intent to harass, annoy, alarm, abuse, torment, or embarrass another," he, among other things, "sends repeated electronic communications[5] in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another."  TEX. PENAL CODE ANN. § 42.07(a)(7) (West Supp. 2018).

Thus, a person may commit the offense of stalking by two manners or means:  (1) by engaging in conduct that constitutes harassment under Section 42.07 (stalking by harassment), or (2) by engaging in conduct that the other person would regard as threatening bodily injury or death or an offense against the person's property.  TEX. PENAL CODE ANN. § 42.072(a); *see Russo v. Bernal*, No. 03-17-00551-CV, 2019 WL 544577, at *6–7 (Tex. App.—Austin Feb. 12, 2019, no pet. h.) (mem. op.) (noting that Section 42.072(a) provides that a "person commits offense of stalking by either engaging in conduct that constitutes harassment under section 42.07 or by engaging in conduct that the person knows or reasonably should know the other person will regard

---

[5]"Electronic communication" is defined as "a transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic, or photo-optical system" and includes, among others, "a communication initiated through the use of electronic mail, instant message, network call, a cellular or other type of telephone, a computer, a camera, text message, a social media platform or application, an Internet website, any other Internet-based communication tool, or facsimile machine."  TEX. PENAL CODE ANN. § 42.07(b)(1)(A) (West Supp. 2018).

9

as threatening bodily injury, death, or property damage"); *Wargocz v. Brewer*, No 02-17-00178-CV, 2018 WL 4924755, at \*2 (Tex. App.—Fort Worth Oct. 11, 2018, no pet.) (mem. op.) (a person may commit the offense of stalking through acts of harassment); *Seals v. Wilborn*, No. 12-17-00208-CV, 2018 WL 1180742, at \*2 (Tex. App.—Tyler Mar. 7, 2018, pet. denied) (mem. op.) (same). Stalking by harassment does not require a showing that the other person regarded the conduct as threatening bodily injury, death, or property damage. *Russo*, 2019 WL 544577, at \*7; *Wargocz*, 2018 WL 4924755, at \*2; *Seals*, 2018 WL 1180742, at \*2.

### C. Analysis

Steven contends that, to establish the offense of stalking, Kathleen needed to show that he caused Kathleen or a member of her family to be placed in fear of bodily injury or death or that an offense would be committed against her or her family member's property. Based on this premise, Steven argues that there was no evidence, or factually insufficient evidence, that he caused Kathleen or a member of her family to be placed in fear of bodily injury, death, or property damage, that a reasonable person would have felt so threatened, or that he knew that Kathleen felt so threatened. Steven does not contend that there was legally and factually insufficient evidence to show that he knowingly engaged in harassment of Kathleen by repeatedly sending electronic communications in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend Kathleen. Nor does Steven challenge the trial court's findings that he engaged in conduct constituting harassment.

As noted above, the Austin Court of Appeals, and other courts of appeals, have held that, to be entitled to a protective order under Chapter 7A for stalking by harassment, the complainant

10

need not show that the other person regarded the conduct as threatening bodily injury, death, or property damage. *Russo*, 2019 WL 544577, at \*7; *Wargocz*, 2018 WL 4924755, at \*2; *Seals*, 2018 WL 1180742, at \*2. Rather, as applicable to this case, a protective order under Chapter 7A may be obtained against a person who, (1) on more than one occasion and pursuant to the same course of conduct specifically directed at another person, (2) knowingly harassed another person, i.e., with intent to harass, annoy, alarm, abuse, torment, or embarrass another, sends repeated electronic communications in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend the other person, (3) which caused that person to feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended, and (4) which would cause a reasonable person to feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended. TEX. PENAL CODE ANN. §§ 42.07(a)(7), 42.072(a)(1), (2), (3)(D).

A trial court's unchallenged findings "are binding on an appellate court unless the contrary is established as a matter of law, or if there is no evidence to support the finding." *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986); *Saltworks Ventures, Inc. v. Residences at Spoke, LLC*, No. 03-16-00711-CV, 2018 WL 2248274, at \*6 (Tex. App.—Austin May 17, 2018, no pet.) (mem. op.). The findings of the trial court noted above establish all the elements necessary to find that Kathleen was the victim of stalking by harassment. There is also more than a scintilla of evidence supporting those findings.

Briefly, the evidence showed that, between December 1, 2016, and July 23, 2018, Steven sent Kathleen 300 electronic communications in which he, for example, variously accused Kathleen of

11

1.      sexually abusing their children;

2.      forcing their children to watch Applicant participate in orgies or other inappropriate

        sexual acts;

3.      neglecting the children;[6]

4.      stalking the children and Steven;

5.      harassing the children and Steven;

6.      forcing the children to vacation with sexual abusers;

7.      being emotionally abusive to the children and Steven; and

8.      using or abusing controlled substances.

He also called Kathleen a monster, psychotic, narcissistic, and a binge drinker. Finally, he referred to Kathleen's friends as narcissistic, narcissistic monkeys, and swingers.

The evidence also showed that these types of communications continued even after Kathleen told Steven these types of communications were harassing and implored him to stop sending them. And they continued after she had filed the Application.

Steven also sent electronic communications to Kathleen's principal,[7] Jennifer Dusek, accusing Kathleen of continuing sexual abuse and neglect of their children, participating in orgies, abusing other children at her school, violating the Educator's Code of Ethics, and harassment.

[6]Although Steven repeatedly accused Kathleen of continuing sexual abuse and neglect of the children, he admitted at trial that the only incident of alleged sexual abuse that he knows of was the "pool incident of July of 2015." Apparently on that date, Kathleen and some of her adult friends were skinny-dipping in a neighbor's outdoor pool while their children were inside the neighbor's house. There was no evidence that the children participated in or witnessed the skinny-dipping.

[7]Kathleen is an elementary school teacher.

These communications also berated Dusek and accused her of violating the law for failing to report his accusations. Although Dusek sent Steven a grievance document so he could provide evidence of his accusations, he never responded with such evidence.

Loretta Maase was the parenting facilitator the trial court assigned to the case in February 2018. Maase testified that, even though protocols for communicating fact-based, non-accusatory emails had been established, Steven told her he would not adhere to those protocols. Instead, he sent Kathleen what Maase described as "long, lengthy, sometimes irrational accusatory emails that were incessant and frequent" and that were harassing, alarming, and concerning. Kathleen testified that these communications made her feel abused, tormented, harassed, offended, and frightened on behalf of herself and her children.

Based on this record, we find there is some evidence supporting the trial court's unchallenged findings that Kathleen was a victim of stalking by harassment. As a result, we overrule Steven's second issue.

## III. Steven's Other Complaints Were Not Preserved

In his first and third issues, Steven complains that the Protective Order violates his right to free speech guaranteed by the First Amendment to the United States Constitution and that the trial court erred in granting a lifetime protective order. To preserve a complaint for appellate review, a party must present to the trial court a timely request, motion, or objection with sufficient specificity as to make the trial court aware of the complaint, unless the specific grounds are apparent from the context, and obtain a ruling. TEX. R. APP. P. 33.1(a); *In re L.M.I.*, 119 S.W.3d 707, 711 (Tex. 2003); *Powell v. Rocha*, No. 03-18-00744-CV, 2019 WL 943209, at *1 (Tex.

13

App.—Austin Feb. 27, 2019, no. pet. h.) (mem. op.). This preservation rule applies even to alleged constitutional error. *L.M.I.*, 119 S.W.3d at 711; *Dreyer v. Greene*, 871 S.W.2d 697, 698 (Tex. 1993).

We have found nothing in the record showing Steven raised these complaints in the trial court, whether by objection or by post-trial motion. He has not preserved these complaints for appellate review. *See Powell*, 2019 WL 943209, at *1. As a result, we overrule Steven's first and third issues.

## IV. Conclusion

For the reasons stated above, we affirm the trial court's final order in suit to modify parent-child relationship, order of criminal and civil contempt, and final protective order.

Scott E. Stevens
Justice

Date Submitted: April 4, 2019
Date Decided: April 22, 2019

14